PEAY v. SEIGLER.

1. Specific Performance.—The contract to purchase the land in question antedated that of plaintiff.
2. Ibid.—Statute of Frauds—Real Property.—A valid contract for the sale of land may be made out by putting together a letter of vendee, the reply by vendor, and the receipt for a portion of the purchase money, provided all the essential parts of the contract can be gathered from the writings.
3. Ibid.—Ibid.—Ibid.—The requirements of the statute of frauds in regard to an agreement to convey lands, are complied with by the signature to the contract of the party to be bound, and by the adverse party bringing an action to affirm the contract. *Meadows* v. *Meadows*, 3 McC., 457; *Church of Advent* v. *Farrow*, 7 Rich. Eq., 378; *Hyde* v. *Cooper*, 13 Rich. Eq., 250; *Mims* v. *Chandler*, 21 S. C., 480; *Herbert* v. *Brisbane*, 25 S. C., 506; *Boozer* v. *Teague*, 27 S. C., 363, *distinguished* from this.
4. Ibid.—Ibid.—Ibid.—A contract for sale of land is taken out of statute of frauds when vendee is put in possession, and makes improvements.
5. Ibid.—Ibid.—Ibid.—Trustee.—The equitable owner of land may require the holder of the legal title, who obtained such title after his contract to purchase and with notice thereof, to execute to him a conveyance.

Before Witherspoon, J., Fairfield, May, 1896. Reversed.

Action by Nicholas A. Peay, jr., against Wm. J. Seigler, as administrator of English P. Jenkins, and his heirs at law, for possession of a tract of land.

The Circuit decree is as follows:

The Rev. Will M. Waller, of Wilmore, Kentucky, on May the 7th, 1895, conveyed by deed to the plaintiff a tract of twenty acres of land, at Longtown, in Fairfield County. The consideration expressed in said deed is $400, the plaintiff paying $100 in cash and executing his three notes of $100 each, payable in one, two, and three years. During the latter part of May, 1895, the plaintiff instituted the above entitled action to recover the possession of said land from the defendants. The defendant, William Seigler, ad-

mits that he is in possession of the land as the tenant of the defendant, English P. Jenkins. The defendant, English P. Jenkins, alleges in his answer that he purchased said land on the 17th day of January, 1895, from one Dr. S. S. Linder, the duly authorized agent of the Rev. Will M. Waller, to sell said land, by paying $100 in cash to said Linder, as such agent, and by giving his three notes of $100 each, payable in one, two, and three years. The defendant, Jenkins, sets up an equitable claim to the land, which he alleges entitles him to the possession of the land as against plaintiff's legal title. The jury rendered a verdict in favor of the plaintiff upon the legal title, and it remains for the Court to pass upon the defendant, English P. Jenkins', equitable defense. The Rev. Will M. Waller, through whom both parties claim, is not a party to the action. No application has been made to have him made a party, and he cannot be bound by the result of this action. It appears that Dr. S. S. Linder did, on the 17th day of January, 1895, as the agent of Waller, contract with the defendant, Jenkins, to sell him the land on the terms set forth in said defendant's answer, and that Jenkins was put in possession of the land by Linder. On the same day, Linder forwarded to Waller a deed to be executed by Jenkins, and notified Waller that he had received from Jenkins $100 cash payment, which he had deposited in bank, subject to the order of Waller, when title was made to Jenkins. It also appears that Linder, as Waller's agent, received the second instalment of the purchase money from Jenkins a year afterwards. There is no memorandum in writing of the sale to Jenkins that will satisfy the statute of frauds. As the defendant, Jenkins, must rely upon part payment of the purchase money and possession to take the case out of the statute of frauds, he must not only show by the preponderance of evidence that Linder was authorized by Waller to sell the land, but also that Linder was authorizied by Waller to put the purchaser in possession of the land before the title was executed by Waller. This is upon the familiar

32—48

principle that when one seeks to bind a principal by the acts of an agent, he must show the authority of the agent to bind the principal.

The defendant, Jenkins, undertakes to show Linder's authority by reference to letters written by Waller, from Wilmore, Ky., to Linder, at Ridgeway, in Fairfield County. It appears that Waller wrote to Linder, on the 6th of January, 1895, wishing to know if Linder could not sell for him his place at Longtown, at a certain price and upon certain terms; stating to Linder that he wanted "a reliable purchaser, one whom you think would make his payments promptly." Linder replied on the 12th of the same month, that he could not get Waller's price, but that he had an offer, stating the terms of Jenkins' offer, and advised Waller to accept said offer. On the 14th of the same month, Waller replied to Linder, stating that after consulting his wife he had "concluded to let the property go at the figures mentioned in your letter. I think there will be no difficulty in getting possession within ten days, if necessary. If you make the trade, this will authorize you to request the party to vacate the house at once. I want a mortgage on the property until it is paid for. Let me hear from you as soon as convenient." On the 17th of the same month, Linder writes Waller that he had received from the defendant $100 in cash, in part payment of the purchase money, enclosed to Waller a title deed to the defendant, Jenkins, to be signed by Waller, and notified Waller that he had deposited the $100 in bank, paid by Jenkins, subject to Waller's order, when Waller made title to Jenkins. On the 21st of the same month, Waller replied to Linder, declining to make title to Jenkins, on the ground that he was not a reliable purchaser, and for other personal reasons. It is sufficient to state in this connection that Waller could not avoid the *authorized acts* of Linder on any such grounds. Waller also stated in his letter of the 24th to Linder that he had just been informed by the plaintiff that he had rented the lands for 1895 from McCormack, who had charge of the

place.   Waller further stated in his letter that if Linder
had incurred any expense to let him know, and concluded
his letter as follows: "I think Nicholas (meaning the plain-
tiff) will take the place, but if he does not, I prefer to rent
again rather than to sell to Jenkins.   So you need not move
any further in the matter until I hear from Nicholas, unless
you shall hear from me."   Other letters of subsequent dates
passed between the parties, but as I do not think they can
be fairly construed as confirmation or ratification by Wal-
ler of Linder's acts, it is not deemed necessary to refer to
them.   There can be no doubt that in his letter of the 6th
of January Waller authorized Linder to sell the land for
him, and that in his letter of the 14th of January he ac-
cepted the offer made by Jenkins to Linder, without know-
ing that Jenkins had made the offer.   It also appears that
Jenkins was put in possession of the land by Linder.

The next point to be considered is, was Linder authorized
by Waller to put the purchaser in possession of the land
before title was executed by Waller?   This must appear, as
Jenkins was dealing with Linder as Waller's agent.   In his
letter of the 14th, accepting the offer proposed by Linder,
Waller states to Linder, he wanted *a mortgage* "on the pro-
perty until it was paid for."   This was a clear indication
by Waller to Linder that the trade was not to be completed
until the purchaser gave a mortgage of the land as security,
after he received the title.   It must have been so under-
stood by Linder, who, in forwarding a deed to be signed by
Waller, notified Waller that he held the cash payment made
by Jenkins, subject to Waller's order, *when he made title to
Jenkins.*   I do not think the power to sell carried with it
authority to Linder to put the purchaser in possession of
the land before he obtained the title from Waller.   Waller
could not be bound by any act of Linder's *after* Linder re-
ceived Waller's letter of January 21st, requesting him to
*suspend* any further negotiations with Jenkins.   The evi-
dence upon this point is not satisfactory.   The possession
must be *actual.*   It does appear that Jenkins did not obtain

actual possession of the land until January 27th, 1895, six days after the date of Waller's letter to Linder on the 21st, objecting to his having further negotiations with Jenkins. It also appears that Waller's letter of the 14th January was in reply to Linder's letter of the 12th of January, which shows that they could communicate with each other by mail in less time than six days. It is difficult to understand how Waller could be held bound by the act of Jenkins in paying, and by the act of Linder in receiving, as Waller's agent, the second instalment of purchase money on the 17th of January, 1896, more than six months after the action had been commenced. It is claimed that plaintiff had *notice*, when he took title from Waller, that Jenkins had bought the land from Linder. This does appear, and it also appears that when Jenkins claims to have purchased from Linder, January 17th, 1895, he also knew that plaintiff had been unsuccessfully negotiating with Waller for the purchase of the land, and that he then knew that plaintiff had rented the land for the year 1895. I do not think that the defendant, Jenkins, is in a position to claim any advantage in equity over the plaintiff on the ground of *notice*. I conclude, that the defendant, English P. Jenkins, has failed to show that his *equitable claim* to the possession of the land is superior to, and shold prevail against, the plaintiff's *legal title*.

It is, therefore, ordered and adjudged, that the equitable defense interposed by the defendant, English P. Jenkins, be overruled.

From this decree the defendants appeal on the following grounds:

I. For that his Honor erred in holding that there was no sufficient memorandum of writing in this case to take the sale of the land out of the operation of the statute of frauds.

II. For that his Honor erred in holding that there was no sufficient part performance to take the sale out of the operation of the statute of frauds, even if there was not a sufficient memorandum of sale.

III. For that his Honor erred in not holding and adjudging that the statute of frauds had no application to the facts of this case, as the statute was not pleaded by the plaintiff, and there was a complete and perfect sale, or contract of sale, followed by possession and improvements, proven by the defendant, without objection on the part of the plaintiff.

IV. For that his Honor erred in holding that Dr. Linder had no authority to put the defendant in possession of the land before a deed had been executed by Waller to the defendant, Jenkins.

V. For that his Honor erred in holding that the defendant, Jenkins, was not in a position to claim any advantage over the plaintiff in equity on the ground of notice.

VI. For that his Honor erred in holding that the defendant, Jenkins, had failed to show that his equitable claim to the possession of the land was superior to, and should prevail against, the legal title of the plaintiff in this action.

VII. For that his Honor erred in not holding and adjudging, under the facts established in this case, that the defendant, Jenkins, had acquired the equitable title to the land in dispute by his contract with Dr. Linder, the agent of Waller, and the payment of the cash portion of the purchase money, entering into possession thereunder and making improvements; and that such equitable title could not be defeated by the plaintiff, unless he showed himself to be a *bona fide* purchaser for value, without notice of the defendant's equitable rights.

VIII. For that his Honor erred in not holding that the plaintiff was not, in any sense, a *bonn fide* purchaser for value without notice, when he found, as a matter of fact, that plaintiff had notice of the defendant's rights, and when it clearly appeared that at the time of such notice the plaintiff had not parted with anything of value, nor acquired a legal title to the land in dispute.

IX. For that his Honor erred in not holding and adjudging that the defendant having acquired the equitable title, and the plaintiff having notice thereof, both actual and con-

structive, the plaintiff took the legal title from Waller, subject to the equities of the defendant, and thereby became a trustee of the legal title for the benefit of the defendant.

*Messrs. J. E. McDonald* and *R. A. Meares,* for appellant, cite: *What plaintiff in action to recover real estate must show:* 15 S. C., 276; 36 S. C., 396. *Defendant may set up equitable right:* 4 S. C., 48. *What sufficient memorandum to take case out of statute of frauds:* 10 Rich. Eq., 459; 33 S. C., 383; 41 S. C., 153. *Part performance will take the case out of statutes:* Bail. Eq., 118; 1 Rich. Eq., 130; 9 S. C., 267; 16 S. C., 384; 21 S. C., 461, 492; 25 S. C., 510; 26 S. C., 255; 28 S. C., 62; 39 S. C., 367; 40 S. C., 143. *Equitable title:* 4 Rich., 347; 9 Rich. Eq., 129; 28 S. C., 58; 39 S. C., 356; 21 S. C., 455. *Equitable title defeats sale for subsequent debts:* 2 Hill Ch., 421; 12 S. C., 108; 15 S. C., 132. *Requisites of plea of bona fide purchaser:* 1 Strob. Eq., 109, *113; 1 DeS., 274; 6 Rich. Eq., 155; 9 Rich. Eq., 25; 3 Strob. Eq., 134; 5 S. C., 101; 14 S. C., 90, 318; 4 Paige, 215; 34 N. J. Eq., 504. *Possession is constructive notice of equitable title:* 22 S. C., 40; 23 S. C., 492; 24 S. C., 295; 28 S. C., 58; 29 S. C., 127; 20 Stat., 15; 40 S. C., 149. *Vendor not necessary party:* 41 S. C., 46. *Holder of legal title trustee for first vendee:* 2 Hill Ch., 426; 9 Rich. Eq., 25.

*Messrs. Ragsdale & Ragsdale,* contra, cite. *Receipt and letters not sufficient memoranda of contract:* 2 McC., 271; 7 Rich. Eq., 378; 13 Rich. Eq., 250; 21 S. C., 480; 25 S. C., 507; 27 S. C., 363; 5 Rich. Eq., 170. *Equities being equal, the first will prevail:* 2 McCord Ch., *169.

March 20, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This action was originally commenced on the 31st day of May, 1895, against English P. Jenkins and Wm. J. Seigler, who was his tenant, for the recovery of the possession of a certain tract of land, containing twenty acres, more or less, situate in the county of Fairfield, in Longtown, South Carolina. Seigler having

been made a formal party, as tenant in possession, Jenkins alone answered, setting up two defenses: 1st. A general denial. 2d. That he was the equitable owner of the land in controversy, under a contract for the purchase of the same from one W. M. Waller, the then legal owner, the terms of which he had complied with, and under which he had entered into possession and made improvements. The plaintiff claimed under a deed from the said Waller, bearing date the 7th day of May, 1895. The case, therefore, presented two issues, one legal and the other equitable; and after the legal issue had been tried by the jury, and a verdict in favor of the plaintiff, the case was then transferred to Calendar 2, for a trial of the equitable issue presented by the answer of defendant, Jenkins. This issue was tried . by his Honor, Judge Witherspoon, who rendered a decree, overruling the equitable defense set up by defendant, Jenkins, and from that decree this appeal was taken, upon the several exceptions set out in the record. The decree of the Circuit Judge, together with the exceptions thereto, will be set out in the report of this case.

After the appeal was taken, the defendant, Jenkins, departed this life intestate, leaving as his heirs at law the parties named as such in the title, as set out in "Case," and the defendant, Seigler, who administered on his estate. Thereupon, by an order of this Court, the appeal was continued in the names of such administrator and heirs at law.

The main question in the case is, whether there was a valid contract for the purchase of the land by Jenkins from Waller prior to the contract by which the plaintiff acquired his deed from said Waller. The undisputed fact is, that the said Waller, then being a resident of the State of Kentucky, on the 6th day of January, 1895, by a letter of that date, requested his friend, Dr. S. S. Linder, then residing in the neighborhood of the land, to sell his place at Longtown, on certain terms therein named. To that letter Linder seems to have replied, under date of 12th January, 1895, saying that he could not find a pur-

chaser at the price named by Waller, but that he had an offer of $400, payable one-third cash and the balance in three equal annual instalments, with interest at the rate of eight per cent. per annum, and recommended the acceptance of the offer. Waller replied, on the 14th of January, 1895, saying, amongst other things: "After consideration, Mrs. W. and myself have concluded to let the property go at the figures mentioned in your letter, namely: $400, on the following terms: $100 spot cash and $100 per year for three years, at eight per cent. per annum. The party who is living in the house now has not re-rented for this year; so, of course, he can give possession right away. I think there will be no difficulty in getting possession within ten days, if necessary. If you make the trade, this will authorize you to request the party to vacate the house at once. * * * I want a mortgage on the property until it is paid for." Upon receipt of this letter, Linder at once notified Jenkins that his offer had been accepted by Waller, asking him to come to town and make the cash payment. Jenkins came on the 17th of January, 1895, made the cash payment, and took from Linder a receipt, of which the following is a copy: "Ridgeway, S. C., January 17th, 1895. Received from E. P. Jenkins $100, as first payment in full on Waller land in Longtown, S. C. (Signed) S. S. Linder, agent for Will. M. Waller." On the same day, Linder notified the tenant on the land, John Smith, in writing, that he had sold the land to Jenkins, and to yield the possession to him. The tenant, John Smith, testifies that Jenkins took possession of the land on the 17th January, 1895, which he surrendered to him upon the receipt of the note from Linder directing him to yield the possession to Jenkins, though it seems, from the testimony of Jenkins, that he did not immediately turn Smith out, but allowed him to remain there a few days, as he had no place to go to; so that Jenkins did not actually move to the place until the 27th of January, 1895. As soon as Linder had thus closed the trade with Jenkins, he immediately wrote Waller, inform-

ing him what he had done, enclosing the draft of a deed to
Jenkins for Waller to execute.    To this letter Waller re-
plied, under date of 21st January, 1895, saying, amongst
other things: "Your letter of January the 17th received. I
cannot accept an offer from Jenkins, as I do not consider
him reliable.    I had no idea, when you wrote me of the
offer made for the place, that it was from Jenkins.    You
will recollect that I stated in one of my letters to you that
of course the party must be a reliable person."   Then, after
speaking of some negotiations between himself and the
plaintiff, Nicholas A. Peay, jr., for the purchase of the
place, he uses the following language, the important
significance of which will be seen presently: "I think
Nicholas will take the place; but if he does not, I prefer
to rent again rather than sell to Jenkins."   This lan-
guage shows conclusively that Waller had not at the
date of that letter—the 21st of January, 1895—made any
contract with the plaintiff for the sale of the land in ques-
tion..    There was also testimony tending to show that the
plaintiff, as far back as December, 1894, had been negotiat-
ing by letter with Waller for the purchase of the place;
but the testimony of the plaintiff himself was exceedingly
indefinite and unsatisfactory, to say the least of it, as to
when the terms of the purchase had been agreed upon; the
plaintiff finally saying that this would be shown by the
letters which he had placed in the hands of his attorneys,
but which letters were not offered in evidence—the only
letter from Waller to plaintiff, bearing date 19th of Decem-
ber, 1894, which was offered in evidence, showed that
Waller had explicitly declined to accept plaintiff's proposi-
tion.    Indeed, so far as appears from the testimony set out
in the "Case," there is no evidence as to when the trade
between Waller and plaintiff was closed, except the deed,
which bears date 7th of May, 1895, long after the contract
with Jenkins had been closed and he put into possession
by Waller's agent, Linder, and long after he, Jenkins, had

complied with the terms of the contract by making the required cash payment.

The first inquiry is, whether there was a sufficient memorandum in writing of the contract between Waller, through his agent, Linder, and Jenkins, for the sale of the land. As was said in _Kennedy_ v. _Gramling_, 33 S. C., at page 383, "it is not and cannot be denied, that a valid contract, for the sale of real estate, may be made out by putting together a letter of the defendant to the plaintiff, and the plaintiff's reply thereto, or _vice versa_, provided all the essential terms of the contract can be gathered from the terms of such letters." Now, in this case, it is clear that all of the essential terms of the contract here in question can be gathered from the correspondence between the vendor, Waller, and his agent, Linder, and the receipt given for the cash portion of the purchase money. Waller unquestionably requested and authorized Linder to sell his place at Longtown, by his letter of the 6th of January, 1895, upon certain terms therein specified, and the only restriction he then imposed was expressed in these words: "Of course, I want a reliable purchaser, one whom you think would make his payments promptly." In accordance with this request Linder undertook to sell the land, "and had tried to sell to two other parties before he offered the land to Jenkins, but could not sell to them at the same price offered by Jenkins." He then, as it seems, by letter of the 12th of January, 1895, communicated to Waller the offer which had been made by Jenkins, and Waller, by his letter of the 14th January, 1895, accepted the terms offered, repeating the same, and saying in that letter that he wanted a mortgage on the property until it is paid for. Thereupon Linder closed the trade with Jenkins, receiving the cash payment, giving his receipt therefor as the agent of Waller, and put Jenkins in possession of the land. We do not see how it can be doubted that these letters and this receipt showed all of the essential terms of the contract; the property sold was referred to in terms much more specific, "the

Waller land in Longtown, S. C.," than were found sufficient
in *Neufville* v. *Stuart*, 1 Hill Ch., 159, in which the offer,
made by letter, was "for the settled plantation on which
Mr. Neufville resided, containing 869 acres," which was
accepted by letter, reciting the terms of the offer; and more
specific than was found sufficient in *Kennedy* v. *Gramling*,
*supra*, in which the contract was made by letters, the only
description of the property referred to was the statement in
the vendee's letter making his offer, that if his offer was
not accepted, he was ready, at any time, to settle for the
year's rent, and this was regarded as sufficient to show that
both parties, in their letters, referred to the same piece of
property, to wit: the property previously rented by the ven-
dee from the vendor.   This Court, in passing upon this
particular question, used the following language in that
case: "It is true, that no particular piece of property is, in
terms, specified in either of the letters, and if there is noth-
ing in the letters designating the particular property for
which the offer is made and accepted, that would be fatal
to the validity of the contract" (citing the cases of the
*Church of Advent* v. *Farrow*, 7 Rich. Eq., 378; *Hyde* v.
*Cooper*, 13 Rich. Eq., 250; *Hurbert* v. *Brisbane*, 25 S. C.,
506, relied upon by counsel for respondent in this case).
"But while parol evidence is inadmissible to supply an
omission in the writing of any reference to the particular
property referred to, yet such evidence is competent to show
the situation and surrounding circumstances of the parties,
and thereby identify the particular property referred to in
writing.   Thus, where there is a proposition to sell and an
agreement to buy the house in which plaintiff resides, there
is no doubt that parol evidence would be admissible to show
in what particular house he did reside, as there could not be
a shadow of doubt that both the parties—the one in making
the offer and the other in accepting it—had reference to the
same property, and that is the great point.   Hence it may
be stated as a rule, that whenever the writing or writings
relied upon show, in themselves, that both parties referred

to the same property, then the requirements of the statute
are fulfilled, and parol evidence may be resorted to for the
purpose of designating what particular piece of property
both parties had reference to; but where it does not appear
from the writings themselves what property was referred to
by the parties, then parol evidence is not competent to show
that fact.    In other words, the writings relied upon must,
in and of themselves, furnish the evidence that the minds
of the parties met as to the particular property which the
one proposed to sell and the other agreed to buy; and when
such evidence is not found in the writings, it cannot be
supplied by parol, but when it is found there, then parol
evidence of extrinsic circumstances may be resorted to for
the purpose of specifically designating the property to which
both parties are shown to have referred by the terms of the
writings."    These views are fully sustained by text writers
of high authority.    Pomeroy on Contracts, sections 90 and
152; Fry on Spec. Perform., section 209, and Browne on
Stat. of Frauds, section 385.    See, also, what is said by
Harper, Ch., in *Hatcher* v. *Hatcher*, McM. Eq., 319.   Now,
in this case there can be no doubt that the letters and re-
ceipt show beyond dispute that the land which Waller
offered to sell, and which Jenkins agreed to buy, was the
same land—the Waller land at Longtown, S. C.—and was
so referred to in the writings; and surely, in the absence of
any evidence that Waller owned any other lands at Long-
town, there could be no doubt that both parties referred to
the land here in question.    The fact that the name of the
proposed purchaser was not mentioned when the offer was
communicated to Waller cannot affect the question, in view
of the fact that the name of the purchaser was stated in
the receipt for the cash payment, which was signed by Lin-
der as the agent of Waller, and, therefore, to be regarded as
his act.    The fact that Waller, in accepting the offer, stated
that he would expect a mortgage to secure the payment of
the deferred payments, upon which the Circuit Judge seems
to lay some stress, does not seem to us a matter of any im-

portance; for, in the first place, Jenkins could not give a
mortgage until he had obtained a deed, and this Waller
declined to execute.    But, in the second place, and what is
more to the point, when Jenkins made the contract and en-
tered into possession, after having made the cash payment
required, the relations between the parties became that of
mortgagor and mortgagee, and in equity Waller had a lien
on the land for the deferred payments; so that, in reality,
he had what he wanted.    See 1 Pom. Eq. Jur., sections 368
and 372.    The other objection, that Waller required a re-
liable purchaser, and that he did not consider Jenkins relia-
ble, is very properly disposed of by the Circuit Judge.
Besides, Waller, in making this requirement, defines what
he means by a reliable purchaser—"one whom you (Lin-
der) think would make his payments promptly"—and Lin-
der says he so regarded Jenkins, and the evidence fully
bears him out in so saying.    Jenkins made the cash pay-
ment very promptly, and he also made the next payment
two days before maturity, which, however, having been
made after Linder's agency had been revoked, and after this
action had been commenced, cannot affect this case further
than to show that Jenkins was a reliable purchaser, as de-
fined by Waller.

If it should be said that the requirements of the statute
of frauds were not fulfilled because Jenkins signed no writ-
ing binding him to the performance of the contract, a con-
clusive answer would be found in the case of *Sams
v. Fripp*, 10 Rich. Eq., at page 459, where the fol-
lowing language will be found: "It has always been
held that the requirements of the statute of frauds, concern-
ing agreements to convey lands, were fulfilled by the sig-
nature to the contract of the party to be bound, where the
adverse party, by bringing his bill, or any writing, affirms
the contract."    Here Jenkins has certainly affirmed, in
writing, the contract in his answer, and asked that it be en-
forced.    It must be concluded, therefore, that the require-
ments of the statute of frauds were fully complied with in

this case, and that the Circuit Judge erred in holding other-wise.

The cases cited by respondent's counsel to show that the writings here relied upon do not fulfill the requirements of the statute, do not, in our judgment, sustain such position. In *Meadows* v. *Meadows*, 3 McC., 457, the sale was at auction, and the entry was made by the *clerk* and not by the auctioneer, which entry was in these words: "The tract of land to Wm. Meadows, jr., at $5.48." It was held, first, that the clerk was not the agent of the parties, and, therefore, not authorized to make the entry. Second, that the entry was not sufficient, because there was nothing in it to indicate what tract of land was offered for sale, or what was the number of acres; to which may be added there was nothing to show the amount of the purchase money, for the price set down was, manifestly, the price per acre, and as the number of acres was not indicated, it would be impossible to ascertain from the entry what was the amount of the purchase money. So that, in that case, the writing relied on failed to indicate two essential terms of the contract—the particular thing sold, and the amount of the purchase money. In the *Church of Advent* v. *Farrow*, 7 Rich. Eq., 378, the bill was for the specific performance of a contract, evidenced by a subscription paper for the building of a church, upon which Mr. Henry subscribed "$50 and the lot to build on." This was very properly held to be so utterly indefinite as to be incapable of enforcement. For the writing did not, in any way, indicate the extent of the lot—whether one acre or half an acre or what area—or where it was to be located. In *Hyde* v. *Cooper*, 13 Rich. Eq., 250, the writing was in the form of a receipt for $100 in part payment of the purchase money ($1,300) "of a tract of land, to be defined according to lines and corners previously agreed upon." There the writing afforded no indication as to how much land was intended to be sold, or where it was located; and, of course, it was held that the requirements of the statute were not fulfilled. Indeed, the

pleadings in that case showed that the parties differed widely as to the lines and corners said to have been previously agreed upon; and, hence, without resorting to parol evidence to explain what the parties had agreed upon, which was clearly incompetent, it would have been impossible to have framed a decree for specific performance. In *Mims* v. *Chandler*, 21 S. C., 480, the writing relied on was in the form of a receipt, in these words: "Received of Timothy Mims $285, to be placed on land papers," but what land papers, or what land was referred to, the receipt afforded no indication whatever. Hence it was held that the writing was insufficient. In *Humbert* v. *Brisbane*, 25 S. C., 506, the writing relied on was a receipt, in the following words: "Charleston, January 23d, 1874. Received of James Brisbane $90 on account of the purchase of thirty acres of land, the balance of $70 is due January 1st, 1875, when I will make good titles. (Signed) J. M. Humbert." The Court held that this writing did not satisfy the requirements of the statute of frauds, saying, in that receipt, "there is no such description or designation of the land proposed to be sold as would enable a Court to decree a conveyance. There is nothing but a bare statement of the number of acres, but where it is located or what are its boundaries is left wholly uncertain." In *Boozer* v. *Teague*, 27 S. C., at page 363, the writing relied upon was a letter which did not show the very material matter—the amount to be paid— and, for that reason, was held insufficient to satisfy the requirements of the statute. But in the case now under consideration, all the essential terms of the contract—the amount of the purchase money, and the instalments into which it was to be paid, the rate of interest on the deferred payments, the name of the purchaser, and the location of the property sold, can all be definitely and certainly learned from the writings relied upon—the letters and the receipt for the cash portion of the purchase money, and hence the requirements of the statute of frauds are fully satisfied.

But even if it could be held that the requirements of the

statute had not been complied with, it seems to us that the testimony was quite sufficient to show such a part performance of the contract on the part of Jenkins, as would take this case out of the operation of the statute, and entitle him to a decree for specific performance. It is not and cannot be denied, that on the 17th of January, 1895, Linder, as the duly authorized agent of Waller, the then owner of the land, made a verbal contract with Jenkins for the sale of the land, and that in pursuance of that contract, Jenkins, on that day, paid in cash so much of the. purchase money as was required to be paid by the terms of the contract. And we think that the evidence shows that on the same day Jenkins went into possession under said contract, made improvements on the land, and had since retained the possession. This was entirely sufficient to show such a part performance of the contract as would take the case out of the operation of the statute of frauds. See *Mims* v. *Chandler*, 21 S. C., at page 492, and the authorities there cited. It is true, that the Circuit Judge, in his decree, does say that while Linder was duly authorized by Waller to sell the land, he was not authorized to put the purchaser into possession, and hence, we suppose, the view of his Honor was that the possession taken under the authority of Linder was wrongfully taken. With all due deference, it seems to us that the view taken by the Circuit Judge was based upon a misconception of the testimony. In the letter of Waller to Linder, under date of the 14th of January, 1895, accepting the offer communicated by Linder, he says, amongst other things, "The party who is living in the house now has not re-rented for this year; so, of course, he can give posseision *right away.* I think there will be no difficulty in getting possession within ten days, if necessary. If you make the trade, *this will authorize* you to request the party to vacate *at once.*"

This, especially the words we have italicized, was amply sufficient to justify Linder in supposing that he had full authority to put the purchaser in possession "*at once,*" and

accordingly he did just what he was directed by Waller to do, requested the tenant in possession of the house to vacate at once, and turn over the possession to the purchaser, Jenkins. It is clear from this letter that Waller intended his agent, Linder, to understand, and it is equally clear that such agent did understand, that, if the proposed trade was made, the purchaser was to have possession *"right away;"* and there is nothing whatever in that letter calculated to convey the impression that there was to be any delay in giving the purchaser immediate possession; certainly nothing to convey the impression that possession was to be withheld until the titles were executed and a mortgage given. The expression, "I think there will be no difficulty in getting possession within ten days, if necessary," was doubtless prompted by some notion that the tenant would or might refuse to surrender the possession *"at once,"* and then it might be "necessary" to institute some proceeding to eject him. At all events, there is not the slightest indication in that letter of any intention on the part of Waller that Linder should not give the purchaser possession until titles were made, for if that had been Waller's intention it would have been very easy and most natural for him to have said so. But, instead of so saying, the language used shows that Waller intended possession to be given *"right away."* We are obliged to say that the testimony in the case is well calculated to convey the impression that Waller so much preferred to sell to the plaintiff rather than to Jenkins that he was willing to sell to the plaintiff on much less favorable terms than those offered by Jenkins, inasmuch as by his agreement with the plaintiff he lost the interest on the purchase money from the 17th of January to the 7th May, 1895, and then agreed to take interest at a rate three per cent. less than that which Jenkins had agreed to pay, and that he endeavored by after-thought to justify his refusal to abide by the contract made with Jenkins by his duly authorized agent.

If then, as we have seen, the contract with Jenkins was

33—48

valid, either under the statute of frauds or by reason of such a part performance as would take the case out of the operation of the statute of frauds, then Jenkins, on the 17th of January, 1895, became the equitable owner of the land, and, as such, became entitled to demand specific performance of the contract, by the execution of a conveyance from the holder of the legal title of such land. If authority be needed for this proposition, it may be found in sections 368 and 372, above cited, from 1 Pom. Eq. Jur., as well as in our own cases of *Roberts* v. *Smith*, 21 S. C., 455; *Sweatman* v. *Edmunds*, 28 S. C., 58, and *Watts* v. *Witt*, 39 S. C., 356.

While this would be conclusive as to Waller, if he still held the legal title, the only remaining inquiry is, how this doctrine affects the plaintiff, who is now the holder of the legal title. If he could be regarded as a purchaser without notice of the equitable title of Jenkins, his right would, unquestionably, prevail. But, unfortunately, he cannot be regarded as a purchaser for valuable consideration without notice, for several reasons. In the first place, the testimony conclusively shows, and the Circuit Judge so finds, that he had actual notice of the equity of Jenkins long before he acquired the legal title, and before he had paid a single dollar of the purchase money. The well settled rule is, that a person, in order to claim the protection of the plea of purchaser for valuable consideration without notice, must not only have acquired the legal title, but must also have paid the purchase money, before he has received notice of the equity of his adversary. *Bush* v. *Bush*, 3 Strob. Eq., 134. *Lynch* v. *Hancock*, 14 S. C., 90. If it should be said that the plaintiff had been negotiating with Waller for the purchase of the land before Jenkins made his contract, and thereby acquired some equity prior to that of Jenkins, the conclusive answer would be that the testimony not only fails to show this, but shows the contrary.

It does appear that some time in December, 1894, the plaintiff had made an offer to Waller for the land, but the

letter of Waller, under date of the 19th of December, 1894, above referred to, conclusively shows that such offer was declined by Waller, and we find no testimony on the part of the plaintiff showing when he renewed the negotiation— the testimony of the plaintiff himself failing to fix any date—he referring to letters in the possession of his attorneys as showing the date, which letters were not introduced in evidence. So that it cannot be said that the testimony shows that the plaintiff had acquired any equities by his negotiations with Waller, before the contract was made with Jenkins. Indeed, as we have said above, the letter of Waller to Lindler, under date of the 21st of January, 1895, conclusively shows that the plaintiff had not, at that date, made any contract with Waller; and that was four days after the contract made with Jenkins. The Circuit Judge, in finding "that plaintiff had notice, when he took title from Waller, that Jenkins had bought the land from Linder," also finds "that when Jenkins claims to have purchased from Linder, January 17th, 1895, he also knew that plaintiff had been unsuccessfully negotiating with Waller for the purchase of the land, and that he then knew that plaintiff had rented the land for the year 1895;" and he adds that he did not think that Jenkins was in a position to claim any advantage in equity over the plaintiff on the ground of notice. Now, if Jenkins had notice that the plaintiff had been *unsuccessfully* engaged in negotiating with Waller, that certainly would not have been any notice of any equity thereby acquired by plaintiff, for it would be a contradiction in terms to say that a party had acquired an equity by an *unsuccessful* negotiation. And as to the notice that plaintiff had rented the land, while the testimony is, to say the least of it, very doubtful whether Jenkins knew that plaintiff had rented the land when he made his contract for the purchase, yet, even conceding that to be the fact, we are unable to perceive how that would confer any equity upon the plaintiff.

If, then, the plaintiff cannot be regarded as a purchaser for

valuable consideration without notice, he cannot be regarded as standing in the shoes of his grantor, Waller, who, as we have seen in the authorities cited, held the legal title as trustee for Jenkins, with a lien on the land to secure the payment of the unpaid purchase money, and hence the plaintiff holds the legal title merely as trustee for Jenkins, which he is bound to convey to Jenkins, or, he being dead, to his heirs at law upon the payment of the balance due under the contract made with Jenkins. See 2 Pom. Eq. Jur., sec. 688; Adams Equity, p. 332, *152; 2 Story Eq. Jur., sec. 784. See, also, *Masey* v. *McIlwain*, 2 Hill Ch., at page 426.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with instructions to render a decree requiring the plaintiff to convey the legal title to the land to the heirs at law of English P. Jenkins, upon the payment, within such reasonable time as may be appointed for that purpose, of the balance due on the purchase money under the contract between said Jenkins and the said Waller, through his agent, the said Linder.