16672

WHITE v. FELKEL ET AL.

(72 S. E. (2d) 531)

314

*Messrs. J. Fred Buzhardt,* of McCormick, and *W. H. Nicholson,* of Greenwood, *for Appellant,*

*Messrs. Charles & Charles,* of Greenwood, *for Respondents,*

September 25, 1952.

TAYLOR, Justice.

This appeal arises out of an action for specific performance of a contract for sale of timber and for damages resulting from defendants-respondents failure to perform. The matter was referred to W. B. Tinsley, Esquire, Special Referee, who took the testimony and made his report on January 8, 1951, stating:

"I, therefore, recommend as follows:

"1. That the Court, by its Order, direct that the plaintiff, within ten (10) days from the filing of the Order, satisfy of record the mortgage, if still outstanding against his 167-acre tract of land, and that he file with the Probate Court for Abbeville County true and authenticated copy of the Will of James H. Boykin, and of the probate proceedings in

connection therewith had in the Ordinary's Court, Lincoln County, Georgia.

"2. That upon compliance with the foregoing, that the plaintiff, K. E. White, and the defendant, F. W. Felkel, be directed specifically to perform the contract by the execution and delivery of mutual deeds in accordance with the Contract and the Decree.

"3. That at the same time, the plaintiff, White, be required to pay to the defendant, Felkel, or his attorney, the sum of One Thousand ($1,000.00) Dollars the said amount to be used to pay and discharge of record the liens, if any, outstanding against the property of the defendant, Felkel, on record at the time of the filing of Notice of Lis Pendens in this action.

"4. That in the event that either of said parties fails to execute and deliver deed in accordance with the Order, then that the Clerk of Court for McCormick County be authorized and directed to execute and deliver said deed or deeds and that the sum of One Thousand ($1,000.00) Dollars to be paid by the plaintiff, White, be paid into the hands of the Clerk of Court, who shall use same, if necessary, for the purpose of satisfying the liens against the property of the defendant, Felkel, and shall pay the balance remaining to F. W. Felkel, or his attorney.

"5. That the defendant, W. M. McKinney, be enjoined from entering the premises of the defendant, Felkel, and from cutting or removing any timber therefrom.

"6. That the costs of this action be paid by the defendant, F. W. Felkel."

Exceptions were duly taken and the matter came on to be heard before the Honorable J. Henry Johnson at the February, 1951, Court of Common Pleas for McCormick County, who in an Order dated August 4, 1951, reversed the report of the Referee. Appellant now comes to this Court with exceptions which present, according to his brief, the following questions:

1. Whether the contract sought to be enforced in this action is sufficiently definite and certain to warrant a decree of specific performance? (Exception 1, 2, 4, 5, 6.)

2. Whether his Honor, the Circuit Judge, erred in holding that the plaintiff, White, was not in a position to furnish defendant, Felkel, a good title to the land in question, and, therefore, not entitled to specific performance, due to the outstanding mortgage encumbering plaintiff's land? (Exception 3.)

3. Whether his Honor, the Circuit Judge, erred in holding that the plaintiff, White, was not in position to furnish defendant, Felkel, a good title to the land in question, and, therefore, not entitled to specific performance, due to the outstanding pulpwood contract on the lands? (Exception 3.)

4. Whether his Honor, the Circuit Judge, abused his discretion in refusing plaintiff's specific performance of the contract? (Exceptions 1, 2, 3, 4, 5 and 6.)

It was agreed before the Special Referee by counsel for all parties that the question of damages would not be considered by him, but left for determination by a jury should such become necessary.

The alleged contract appears as follows:

"All saw timber on Sparks place and Lindsey place and Mann place 6 in. across stump in McCormick County, I, K. E. White, give my place which contains 167 acres 3 miles from Lowndesville, S. C., and $1,000.00 dollars 1 year from date to cut timber on these 3 places.

"(Signed)   K. E. White
(Signed)   F. W. Felkel."

The amended Complaint in Paragraph one contains a description of three tracts of land situated in McCormick County alleged to be owned by the defendant, Felkel, and alleges that on or about December 2, 1949, F. W. Felkel agreed to sell and convey to the plaintiff all saw timber measuring six inches or more across the stump standing on

the property above described, plaintiff to have one year in which to remove the timber; that in consideration therefor, the plaintiff agreed to pay Felkel the sum of $1,000.00, and to convey to him his tract of land containing 167 acres, more or less, located about three miles from Lowndesville, S. C. The Complaint alleges that the plaintiff and Felkel agreed that each would satisfy any liens against his property, and the proper deeds were to be executed and delivered to complete the transaction; that plaintiff thereafter employed an attorney, Mr. Fred Buzhardt, of McCormick, to check the public records concerning title to the property, and prepare timber deed; that the records disclosed that there were mortgages against the three tracts of land of the defendant, Felkel; that Felkel was notified of the existence of these mortgages, and efforts were being made by plaintiff's attorney and by Mr. Felkel to clear up these liens. On December 21, 1949, plaintiff notified Mr. Felkel that he was ready to close the transaction; but on December 23 or 24, 1949, Felkel sold and conveyed to the defendant, McKinney, the timber on a portion of the lands, although said McKinney, at the time he purchased the timber, had knowledge that it had previously been sold to plaintiff.

Plaintiff alleges that he has been and is ready and willing to comply with his contract, asks for specific performance and damages and that the defendant, McKinney, be enjoined from entering upon the lands and cutting or removing any timber therefrom.

The defendant, Felkel, in his Answer, admitted his ownership of the land described in the Complaint, but denied the remaining allegations. As a further defense, he claims that the written instrument which he signed was not intended as a final and binding contract; and that his acceptance of a deed from the plaintiff to the 167 acres of land was conditioned upon the plaintiff showing him the property lines of said tract; that the transaction was to be completed promptly, but that plaintiff for more than two weeks made no effort to close same, or to show him the

boundaries of the 167-acre tract; and further that the public records of Abbeville County, in which county the 167-acre tract is located, show that plaintiff, on November 4, 1949, for a consideration of $500.00, had sold the timber, except cedar, measuring four inches and above in diameter on said 167-acre tract to one R. T. Brassell, with the right to remove same in two years; that the public records show a mortgage from K. E. White over said property to R. L. Faulkner in the amount of $500.00; and that for the foregoing reasons plaintiff is unable to convey good title to his 167-acre tract.

The other defendant, McKinney, in his Answer, admitted that he had purchased certain of the timber from F. W. Felkel, but alleges that at the time he did so that he had no knowledge that the plaintiff had previously purchased or contracted to purchase said timber.

The testimony shows that Mr. White and Mr. Felkel met at Lowndesville, South Carolina, on or about December 2, 1949, and proceeded to the 167-acre tract of land of plaintiff, White, and while there and after looking over the property wrote in pencil the alleged contract heretofore set forth. Mr. White testified that before the signing of the contract, he advised Mr. Felkel that the pulpwood on the 167-acre tract had been sold. Mr. Felkel denied this but stated however that Mr. White told him after the instrument was signed. There is testimony to the effect that Mr. Felkel inspected the property for some time and that he was familiar with its condition before signing. There is no date set forth in the written instrument but there is no disagreement between the parties to this. Both Mr. White and Mr. Felkel testified that the transaction was to be completed by the first day of January, 1950.

The testimony further shows that within a few days after the signing of the agreement, Mr. White turned it over to Mr. J. Fred Buzhardt, an attorney, at McCormick, South Carolina, with instruction to check the titles to Mr. Felkel's property and made financial arrangements to comply

with his part of the agreement leaving with Mr. Buzhardt $1,000.00 which was to be paid to Mr. Felkel and $500.00 to pay off the mortgage indebtedness then existing over the 167-acre tract. An examination of the records disclosed that there was a mortgage over each of the three tracts owned by Mr. Felkel, whereupon Mr. Buzhardt talked to Mr. Felkel by telephone concerning the mortgages and advised him that Mr. White had left with him the necessary funds to close the transaction. Mr. Felkel then stated that he would try to get the mortgages satisfied or released. On December 7, 1949, Mr. Buzhardt wrote Mr. Felkel to the effect that Mr. White was anxious to close the transaction and settlement could be made any time Mr. Felkel could deliver the timber deed and satisfy the three mortgages. On December 13, 1949, Mr. Felkel wrote Mr. Buzhardt enclosing a letter from the Wachovia Bank & Trust Company stating that its mortgage had been satisfied and that the mortgage to the Federal Land Bank over the Lindsey place should offer no problem as it was only approximately $100.00 and that the Sparks place without the timber should be worth more than the $450.00 owed to the Dorn Company. A few days later Mr. Buzhardt received from Mr. Felkel a letter from T. G. Duckett, Secretary-Treasurer, dated December 15, 1949, in which Mr. Duckett set forth the balance to the Federal Land Bank as being $78.12. The Dorn Company then agreed to release the timber from the lien of its mortgage and on December 21, 1949, Mr. Buzhardt wrote Mr. Felkel to this effect and advised him that the letter from the Wachovia Bank & Trust Company was sufficient as far as its mortgage was concerned; that if it did not suit Mr. Felkel to pay the mortgage indebtedness of $78.12 to the Federal Land Bank that he ask Mr. Duckett to assign the note and mortgage to Mr. White and send same, with draft attached, to the Dorn Banking Company. He further advised him that the transaction could be closed any day that week until Saturday at noon, or on Thursday, Friday, or Saturday of the next week. This letter was received by Mr. Felkel at Anderson, December 23, 1949.

On December 22, 1949, Mr. Felkel went to McCormick to Mr. Buzhardt's office, found him out of town and went to the home of Mr. McKinney and that same night made an oral agreement to sell to Mr. McKinney the timber on two of the tracts owned by Mr. Felkel in McCormick County. A written contract to this effect was signed on December 24, 1949, after the receipt of Mr. Buzhardt's letter of December 21. Mr. McKinney paid to Mr. Felkel $600.00 at the time and the balance of the purchase price of $2,000.00 approximately one week later. At the time Felkel and McKinney were discussing this matter, Mr. McKinney stated to Felkel that it was his understanding that the timber had already been sold to Mr. White and suggested they go see Mr. White about the matter. Mr. Felkel then stated that he had not sold the timber to Mr. White. On December 24 or 25, 1949, Mr. Buzhardt received a letter from Mr. Felkel advising him that he had been to his office concerning the transaction but found him absent and thinking "something had gone wrong" made arrangements to get the money elsewhere as he could wait no longer and that he had sold the timber on the Lindsey and Sparks tracts. The testimony further shows that a day or two after the contract between Felkel and White was signed (on or about December 2, 1949) McKinney endeavored to buy from White the timber on the Lindsey place and White told him he would give consideration to such sale after his transaction with Felkel had been completed telling him that he had bought the timber but that papers had not been completed. After White learned of the transaction between Felkel and McKinney, White went to McKinney and advised him not to finsh paying the purchase price.

The Referee found as a fact that the instrument between White and Felkel covered the timber on the three tracts in McCormick County known as the Sparks place, the Lindsey place, and the Mann place; that they were specifically described in Paragraph one of the Amended Complaint; and that they were the only lands

owned by Felkel in McCormick County at the time and that no one was misled by references to them in name only, and that the parties in their discussions referred to them in name only.

"It is often said that a greater degree of certainty is required in the terms of a contract which is to be specifically enforced in equity than is necessary in one which is to be the basis of an action at law for damages. A contract expressed in very general terms may be the basis of an action for damages for its breach, although entirely too loose and inexact to warrant a decree for specific performance. Perhaps it would be more accurate to say that the difference between the two classes of cases is not in the amount or degree of the certainty required, but in the extent of the certainty. Where the relief sought is specific excution, it is essential that the contract itself be specific. In other words, the certainty required must extend to all the particulars essential to the enforcement of the contract. But where there has been an entire breach, and compensation is asked in damages, it may be sufficient if there is certainty only as to the general scope and stipulations of the contract. It may well be douted, however, whether there has been any practical recognition of any such distinction by the courts. In determining whether a contract is too uncertain to be enforced, the test is whether the parties understood by the terms used what was included in the agreement, and whether their minds met with respect thereto." Am. Jur., vol. 49, p. 39, Spec. Perf., § 26.

In the case of *Moore v. Maes,* 214 S. C. 274, 52 S. E. (2d) 204, 209, the Court in decreeing specific performance said:

"It is suggested in the brief of appellant that the property covered by the lease and option is not sufficiently described therein. However, the entire record in this case, the pleadings, testimony, and the theory upon which it was tried, show beyond question that the parties were under no misapprehension as to the identity of the premises in question."

In *Fore v. Berry*, 94 S. C. 71, 78 S. E. 706, 709, which was an action or arbitration agreement with the description being "a three-hundred acre tract of land in dispute between Willis Fore and E. B. Berry on January 4, 1886", the Court stated:

"* * * So a description, though indefinite, is sufficient if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change description, fit it to the property conveyed by the deed. It is necessary, however, that the description be such that it can be rendered certain by such evidence."

And in *Speed v. Speed*, 213 S. C. 401, 49 S. E. (2d) 588, 590, where the descriptions appeared as "the store" and as "my interest in the Speed Drug Store property in Abbeville" the Court stated:

"The law does not require that a contract for the sale of lands shall in itself be wholly sufficient to identify the land. The contract is sufficient if it furnishes the means of identification. The writing or writings must furnish the means or key by which the description may be made certain. * * *

"In all such cases, parol evidence is admitted, not to identify, but to designate the subject matter, already identified in the minds of the parties, in the language of the contract when read in the light of the facts.

"It will be noted with regard to the identity of the property mentioned in the second letter of appellant, that specific reference is made to 'my interest in the Speed Drug Store property in Abbeville.' A meager description is frequently held insufficient, where the vendor owns two or more parcels * * * which fit the description. But where it appears from extrinsic evidence that the vendor owns but one parcel of land answering the description in the memorandum, the courts are inclined to uphold such description of the property. *Peay v. Seigler, supra* [48 S. C. 496, 26 S. E. 885]; 37 C. J. S., Frauds, Statute of, § 185, p. 672. Likewise, a description of land by a familiar local appellation which re-

fers to a definite tract, may be sufficient. 37 C. J. S., Frauds, Statute of, § 186, p. 673; *Michelson v. Sherman,* 310 Mass. 774, 39 N. E. (2d) 633, 139 A. L. R. 960." See also *Kennedy v. Gramling,* 33 S. C. 367, 11 S. E. 1081; *Neufville v. Stuart,* 1 Hill, Eq. 159.

"The terms of contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction that neither party can reasonably misunderstand them, and the court can understand and interpret them, without supplying anything." 58 C. J., Page 932.

The Courts have no power to make contracts and then require their performance. They can only require parties to contracts to specifically perform such contracts as they themselves make. *Fairey v. Strange,* 112 S. C. 155, 98 S. E. 135. Both parties agreed that the transaction should be closed before the first of January and should continue for one year from date to provide for the cutting of all timber six inches across stump. There was a conflict in the testimony as to whether the writing was intended as binding on both parties. Both parties, however, affixed their signatures and proceeded to carry out its provisions until Mr. Felkel became fearful lest he not obtain his money by the first of January. The instrument was turned over to an attorney with instructions that he take the necessary steps for the purpose of drawing up the necessary papers with the knowledge of both parties. Mr. Felkel owned no other lands in McCormick County; therefore, there could have been no misunderstanding as to what lands were intended. The Referee found that the parties intended to be bound and were in fact bound. We are constrained to hold that the parties fully understood by the terms used what was included in the agreement and that their minds met with respect to the particulars thereof, thereby bringing the contract within that degree of certainty and definiteness required of a contract to be specifically enforced.

Respondents contend that White was not in position to furnish defendant, Felkel, a good title to the land in question and, therefore, not entitled to specific performance because of the outstanding pulpwood contract on the land. There is a conflict of testimony of the parties as to whether Felkel was informed of the existence of the pulpwood contract prior to or after the signing of the contract. Mr. White testified that he told Mr. Felkel of such contract and that he had no idea it would be cut to which Mr. Felkel said, "I hope he won't." Felkel, however, testified that he was not told until after he had signed, but according to his own testimony raised no objections or made any protests but continued to work with the attorney who was checking the title to the property in order to comply with the terms of the agreement to the end that he would get his money by January 1st, and when he called at the attorney's office the day after he had been written by the attorney to the effect that he was ready to close the transaction but before he had received the letter and found that he was not in, he proceeded to undertake to sell to McKinney and actually completed the transaction with McKinney on the next day after he received the letter. If he signed after being told about the timber being sold, then clearly his position is untenable. If he signed prior to being told, he waived such objections as he might have had thereto under the holding of this Court in *Davenport v. Miller,* 218 S. C. 56, 61 S. E. (2d) 534. This is further substantiated by the fact that after his transaction with McKinney, Felkel wrote plaintiff's attorney, "I am also still interested in the 167 acres he offered me, if he cares to sell."

We are of the opinion that the written instrument signed by both of the parties under the circumstances was such as to reflect a meeting of the minds of such parties and in such terms as to render it enforceable by a Court of Equity; that the Order of the Circuit Judge should be reversed; that the case should be remanded to the Court of Common Pleas for McCormick County for the purpose of carrying out the

recommendations of the Referee as heretofore set forth in this Opinion and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.