## 12182

### ARMSTRONG v. HENSON

#### (137 S. E., 439)

1. SPECIFIC PERFORMANCE—PERSON CONTRACTING TO PURCHASE LAND FOR FARMING PURPOSES HELD ENTITLED TO SPECIFIC PERFORMANCE.— Person contracting to purchase property for farming purposes, in good faith, is entitled to specific performance, since his remedy at law is inadequate, and it does not constitute transaction for speculative purposes.

2. SPECIFIC PERFORMANCE—SPECIFIC PERFORMANCE OF CONTRACT, IN WRITING, FOR SALE OF REAL ESTATE HELD NOT BARRED BY STATUTE OF FRAUDS.—Specific performance of contract to sell real estate, in writing, *held* not barred by statute of frauds, where land was sufficiently identified.

3. VENDOR AND PURCHASER—CONTRACT FOR SALE OF REAL ESTATE HELD TO REQUIRE CONVEYANCE IN FEE, AND NOT SUBJECT TO WIFE'S CLAIM OF DOWER.—Contract for sale of real estate held to obligate grantor to make a valid conveyance in fee, and did not contemplate a conveyance of property subject to wife's claim of dower.

Before McIVER, J., Spartanburg. Affirmed.

Action by T. E. Armstrong against J. V. Henson. Judgment for plaintiff, and defendant appeals. Affirmed.

The decree of Judge McIver is as follows:

This is an action for specific performance, under which the plaintiff asks the Court to require the defendant to convey to him, by proper deed in fee simple, free from incumbrances, a certain tract of land described as follows:

"All that parcel or tract of land, in Spartanburg county, said state, surveyed off of the home place of J. V. Henson, on southeastern portion thereof, on both sides of Jordan road, adjoining lands of A. B. Groce, J. T. Smith, and Mrs. Morrow, with the following boundaries: Beginning at an iron pin in the forks of the road on Greenville and Spartanburg county line, and running thence; N. 83° E. 24 chains to an iron pin in the pasture; thence N. 18° E. 41.51 chains across swamp and field to a stake on the Brigges line; thence N. 70.15° E. 2.08 chains to a center of Middle Tyger river; thence down the meanderings of said river about 35 chains to the mouth of a ditch, ash 3-X, J. T. Smith's

corner; thence up ditch S. 52° W. 3.90 chains to a stake; thence up ditch N. 43° W. 1.18 to a stake; thence N. 78° W. 1.25 chains to a stake; thence S. 86¼° W. 1.07 chains to a stone by wire fence; J. T. Smith's corner; thence S. 57¾° W. 32.56 chains to a stake on the north side of a branch near a large white oak, J. T. Smith's corner; thence up the meanderings of said branch about 22 chains to an iron pin near a bridge and mouth of a ditch; thence N. 1¾° E. 14.50 chains up the county line to the beginning corner, containing 100 acres, more or less, according to survey made by W. A. Christopher, September 16, 1919."

It was by order of the Court referred to the master for Spartanburg county to take the testimony and report the same with his conclusions of law and fact. The cause now comes before me upon exceptions to the master's report, which was adverse to the plaintiff, rejecting his claim for specific performance and recommending that the complaint be dismissed.

The defendant is a farmer residing on a portion of the farm in question, in this county, near the town of Greer. J. D. Lanford who made the original contract with the defendant, was at the time of the contract a member of two firms both engaged in the handling of real estate, including farming lands. On July 31, 1919, J. D. Lanford procured from the defendant the instrument attached to the complaint as an exhibit, which was duly executed by the defendant. The evidence fails to show any fraud or overreaching in connection with this transaction, and defendant's counsel in argument concedes that there was none. Under this instrument, the Carolina Realty Company, one of the firms of which J. D. Lanford was a member, was given the right to sell and to find a purchaser for the lands mentioned, upon the terms and conditions mentioned in said instrument; that is, the purchase price to be $10,000; one-third payable in cash, and the balance in one and two years with 7 per cent. interest per annum. On August 16,

the said J. D. Lanford executed an instrument purporting to convey all rights under the instrument of July 31 to T. E. Armstrong, the plaintiff, but the instrument so executed was, by mistake of Lanford, signed in the name of Cotton States Land Auction Company, the other firm of which Lanford was a member, he having forgotten just how the original contract of Henson was drawn. He says, however, that it was his purpose to convey and assign to Armstrong all the rights and interests of his firm under said instrument of July 31, as far as he could. Under this assignment, Armstrong actually paid $500. The evidence shows that Armstrong is a farmer and owns considerable farm lands, which he has cultivated as a business enterprise. He testifies that he wanted the lands in question as an investment for farming purposes. Soon after the assignment to him, he saw defendant, Henson, and acquainted him with the fact that he had become the purchaser, and discussed with Henson the matter of executing the deed and the payment of the cash portion of the purchase price. Henson at that period raised no question as to Armstrong's right to comply with the contract, pay the purchase price, and demand the deed, and, in fact, Henson in his testimony before the master does not question, but admits, his liability to execute the deed, and expresses his willingness to make as good a deed as he can, but without his wife's dower. There were several conversations between plaintiff and defendant about carrying out the trade. Finally the plaintiff carried and tendered to the defendant the full amount of cash due on the purchase price and offered to comply fully on his part, which tender was refused by defendant, whose only excuse was that his wife refused to renounce her dower. It is shown that it was proposed to the defendant that a sufficient amount to cover the dower interest be deposited as protection against the dower, but this was refused. This action was thereupon begun to compel performance. I find from the evidence that the plaintiff acted

in entire good faith in accepting and acting upon this contract and in his efforts to get title to this land for purposes of farming and for investment, and that Lanford and his companies were engaged in a perfectly legitimate business and acted in good faith in the matter. They complied with the authority given, by finding a *bona fide* purchaser who was ready, willing, and able to comply. The instrument executed by the defendant bound him to convey by conveyance free from incumbrance. He does not question its liability and responsibility to convey, except as to dower.

As I understand the master's report, he refused relief on the sole ground that he was precluded from granting it by the case of *Schmid v. Whitten,* 114 S. C., 245; 103 S. E., 553. It is urged upon me by defendant's counsel that the case at bar is on all fours with that case, and that the Court of equity is without jurisdiction to grant the relief under the facts here shown. I recognize fully the duty of this Court to follow and be governed by the above decision in all cases coming within its purview, and if the facts of this case were similar to the facts of the *Schmid case,* necessarily the same result would follow. I do not agree with the master, however, that the plaintiff is precluded by the *Schmid case* from recovering under the facts here. I do not understand that the Supreme Court in that case meant to outlaw the business of *bona fide* estate dealers or to close the doors of equitable relief to them, nor was it meant to be understood as holding that a farmer who engages to purchase a farm as an investment and for farming purposes, even though he may have anticipated and expected that he might sell at a profit, is engaged in speculation within the meaning of the decision so as to deprive him of such relief. In a sense, almost all purchasers of real estate, or at least many of them, are speculative; that is, the purchaser ultimately expects to sell and make a profit. The desire to buy and sell at a profit is the very life of trade and is not a reason for denying equit-

able relief, so long as it appears that the contract was made in good faith, intended really to be carried out, and an actual investment made. The very able opinion of Mr. Justice Watts, on page 251 (103 S. E., 554), of that case, recognizes that there is such a thing as " legitimately buying and selling " lands, and that, in such a case, relief would not be denied. It would seem from Justice Watts' opinion that the very reason why relief was refused in that case was because " the case presents no such features "; that is, it was not a case of legitimately buying and selling, not a *bona fide* sale or purchase for investment, or farming or other legitimate purpose. It does not seem to me that this can be said of the parties involved here. Certain it is that the defendant at the outset intended to sell and convey; he authorized the realty company to conduct the sale and find a purchaser; that is, one who was willing, in good faith to actually take the land at the price upon the terms named. They found that person in the plaintiff. The evidence is that the plaintiff was approached by others and offered a profit of $2,000, which he declined. If he bought the property for farming purposes, in good faith, the case presented, it seems to me, is a typical one for specific performance. The remedy at law is inadequate as held in numerous authorities in such cases, the damages being unascertainable. These being my views, it follows that the findings of the master and his recommendations cannot be sustained and must be reversed.

It was suggested by defendant's attorneys that the statute of frauds is a bar, but I am unable to sustain this contention. The defendant bound himself in writing under the instrument of July 31. Whatever rights or interest the Carolina Realty Company had under this instrument were assigned to the plaintiff, though in an irregular way. At any rate he found a purchaser and produced him, and he comes into Court upon a complaint verified and adopted by him, and asks that the contract be en-

forced. These facts constitute a sufficient compliance with the statute. It is also claimed that the land cannot be located from the description in writing. The writing itself appears to contain sufficient identification of the lands intended to be conveyed. In fact, the evidence shows that, by agreement between the parties, a responsible surveyor was employed to run out the lines and boundaries, and he furnished the defendant with a description by metes and bounds of the 100-acre tract, which description as contained in a letter to the defendant is in evidence as an exhibit, and is in accordance with the description at the beginning of this decree. It is claimed for defendant, however, that he objected to one of the lines run by the surveyor, and defendant so testified at the reference. The surveyor, however, swore that he made no complaint or objection at the time of the survey. No sufficient reason has been shown, in any event, to justify this Court in rejecting or eliminating any of the boundaries fixed by the survey.

The defendant contends in the evidence that the plaintiff knew when he became the purchaser that the defendant's wife would not renounce her dower, but this is disputed by the plaintiff. I construe the instrument signed by defendant to obligate the defendant to make a valid conveyance in fee. He never contemplated at the time that there would be any shadow upon the title, and neither did the realty company at that time, nor later, the plaintiff. When the matter of dower did arise between defendant and Lanford, the latter appeared to believe and so advised that Mrs. Henson would change her mind and would renounce her dower. I do not see how it can be said that the parties interested contemplated taking the property subject to an outstanding claim of dower. If they did not, this Court is quite competent to furnish relief against such dower and, at the same time, enforce the contract.

It is therefore ordered, adjudged, and decreed that the report of the master with his findings, refusing plaintiff re-

lief, be reversed. It is further adjudged and decreed that the plaintiff is entitled to specific performance of his contract and upon tender to the defendant by plaintiff of one-third of $10,000, and a note for one-third thereof payable in one year and note for the remaining third thereof payable in two years, together with mortgage to secure said notes, covering the premises, all duly executed by the plaintiff and payable to the defendant, the mortgage to contain the usual and customary conditions and provisions, and the notes bearing interest at 7 per cent. per annum, payable annually, the defendant is hereby ordered and commanded to execute to the plaintiff a deed in the usual form with general warranty in fee simple, conveying the tract hereinbefore described to T. E. Armstrong, his heirs, and assigns, said deed to contain also the renunciation of the defendant's wife's dower in said contract if she will renounce the same. If she will not renounce, then, and in that event, the plaintiff shall have the right to retain one-sixth of the entire purchase price of $10,000, as a protection against such inchoate right of dower, and, in that event, the notes and mortgage above referred to, as well as the amount of cash to be tendered by plaintiff, shall be proportionately reduced, and when tendered shall be accepted by the defendant as full compliance on the part of the plaintiff; provided plaintiff also execute and deliver or tender to the defendant his bond for $1,666.67, secured by mortgage of the premises in question, payable to the defendant, and conditioned that the said T. E. Armstrong will pay to the said J. V. Henson interest at 8 per cent. per annum on said sum, annually so long as defendant's wife lives and upon her death, while defendant still lives, that he will pay said sum of $1,666.67 to defendant; and further, that, in event said wife survives defendant, plaintiff will, upon the death of defendant, pay the said sum to his wife with any accrued interest.

Leave is given to plaintiff to apply at the foot of his decree for any further orders that may be necessary hereafter to carry out the terms thereof.

*Messrs. Burnett & Burnett,* and *Evans & Galbraith,* for appellant, cite: *Transaction for speculative purposes:* 127 S. C., 139. *Right of selection:* 39 Cyc., 1316, P. 6. *Cases distinguished:* 69 S. C., 370; 53 S. C., 573; 77 S. C., 64. *Overruled:* 94 S. C., 495.

*Messrs. Christopher & Ruse,* for respondent.

March 24, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

After a careful reading of the record in this cause, we are convinced that the decree of Hon. Edward McIver, deceased, Circuit Judge, was proper under all the circumstances. The decree will be reported in full.

The judgment of this Court is that all the exceptions be overruled, and that the decree of the Court of Common Pleas for Spartanburg county be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN and STABLER, and MR. ACTING ASSOCIATE JUSTICE PURDY concur.

MR. JUSTICE COTHRAN: I think that the case of *Schmid v. Whitten* is wrong in principal and should be distinctly overruled.