## 15661

HOLLY HILL LUMBER COMPANY, INC., v. McCOY *ET AL.*
(30 S. E. (2d), 856)

(Order U. S. S. Ct. denying Writ of Certiori, filed with Clerk S. C. Sup. Ct., November 20, 1944)

(65 S. Ct., 191)

*Mr. C. T. Graydon,* of Columbia, S. C., and *Mr. M. W. Seabrook,* of Sumter, S. C., Counsel for Appellants,

62

Mr. T. B. Bryant, Jr., of Orangeburg, S. C., argued the case for Respondent.

July 13, 1944.

Mr. Associate Justice Stukes delivered the unanimous Opinion of the Court:

It is necessary for a full understanding of this judgment to first read the two former decisions resulting from prior appeals in this case, reported, respectively, in 201 S. C., 427, 23 S. E. (2d), 372, and 203 S. C., 59, 26 S. E. (2d), 175, 148 A. L. R., 285.

The last cited left the controversy within narrow compass. It was remanded for the purpose of making the wife of the vendor, who refused to renounce her dower, a party, to adjudge the value of the real estate irrespective of the contract price and determine the proper method of evaluating the inchoate dower interest and protecting it. The following is quoted from that decision (203 S. C., at page 66, 26 S. E. (2d), at page 177, 148 A. L. R., 285):

"We reject as utterly untenable the argument of appellant that constitutional issues preclude the Courts of this State from giving effect to a decree for specific performance, by making proper provision to protect the vendee against future litigation on the part of a grantor's wife who refuses to renounce dower. The age of appellant's wife is in the record. Long before her marriage and indeed many decades before she was born, it was an established rule of property in this State that the dower right of the wife can be vested in the purchaser of real estate from the husband by judicial decree, upon the making of stated provisions for the payment to her of the value of her dower right in the event that she outlives her husband.

"The dower right in South Carolina is a creature of the common law, recognized however by numerous statutory

provisions relating to the same. See for example Code 1942, Sec. 8578 *et seq.* The decisions of this Court giving effect to the dower right and providing for its involuntary relinquishment in cases of the present character are an integral part of the law defining and protecting the dower right, so that when the dower right of the appellant's wife arose out of the marriage relationship of the parties, it was a right that had already been well defined by law. *Wright v. Jennings,* 1829, 1 Bailey, 277; *Stewart v. Pearson,* 1872, 4 S. C., 4; *Payne v. Melton,* 1904, 69 S. C., 370, 48 S. E., 277; *Wannamaker v. Brown,* 1907, 77 S. C., 64, 57 S. E., 665; *Brown v. Brown,* 1913, 94 S. C., 492, 78 S. E., 447; *Armstrong v. Henson,* 1927, 139 S. C., 156, 137 S. E., 439; *Ladshaw v. Drake,* 1937, 183 S. C., 536, 191 S. E., 713, 716.

"There is accordingly no juridical basis upon which to contend, as the appellant does here, that to take away the inchoate dower right of appellant's wife in the present case, so as to give effect to the decree for specific performance heretofore granted, upon terms that will assure her full compensation in accordance with the applicable decisions of this Court, will deprive either her or her husband of property without due process of law."

Upon the remanding of the case to the Circuit Court the summons and complaint were amended, after leave granted by order of the Court on application; the wife, the present appellant Sara S. McCoy, was made a defendant upon proper allegations for the adjudication of her inchoate right and the barring of her claim on that account in the premises which her husband had contracted to sell and which contract had been ordered to be specifically performed. See the former decisions cited, *supra.* The defendants demurred which was properly overruled upon the authority of the former decisions; they then answered, the wife undertaking to set up fraud in the procurement of the contract, and demurrer to that defense was sustained upon the well-taken ground that

she was not a party to the contract or privy thereto and that defense when set up by her husband, the vendor, had been decided against him, affirmed by this Court in the first appeal.

The case then came on for trial before the Honorable Arthur L. Gaston, Circuit Judge, who, sitting as a chancellor, heard the evidence (this mode of trial having been first consented to by all the counsel) and thereafter rendered his decree and judgment in which he found the value of the land in July, 1941, the time of the making of the contract or option for sale, to be $10,000.00, the contract price; and he found that the value of Mrs. McCoy's inchoate dower was equal to one-sixth of the value of the fee, to wit, $1,666.67, which he directed be withheld from the purchase price and, should she fail to formally renounce her dower, as directed by him, then the plaintiff will retain the portion of the consideration allotted to dower and execute its bond unto the defendants therefor, secured by its duly executed first mortgage upon the premises, with interest thereon at the rate of six per cent. per annum, payable annually to the husband, the vendor, as long as his wife lives, and should she predecease him, then the principal shall be payable to him, and should his wife survive him the principal shall be payable to her upon his death. In accord with another provision of the decree the plaintiff has paid the full amount of the consideration to the clerk of court and has been let into possession of the premises, notwithstanding appeal of the defendants from the decree and pending exercise by the defendants of the option of renouncing dower and obtaining the full consideration from the clerk.

The present appeal is upon numerous exceptions which appellants in their brief have embodied in nine questions which are all answered adversely to them in what is herein said, but they will not be considered *seriatim* and some of them need not be expressly stated.

The appellant wife was not a party to the action at the time of the former appeals and adjudication of the constitutional contention, now made by her and fully considered again in her behalf, but she has advanced no argument effective to induce a different result. Reference may be had to the above quotation from the last former decision, which is conclusive of the issue with respect to both appellants.

However, it may be said that Courts have been divesting the dower interests of married women for many a day, in order to compel the specific performance of the contracts of husbands who have undertaken to convey the unencumbered title to real estate which they owned. It is interesting to note that the early English equity courts followed the practice of imprisoning the husband-vendor until his wife relented from her refusal to renounce or convey her interests in the land conveyed. 46 A. L. R., 748. Thus the wife was deprived of the support, companionship, etc., of her husband, and gradually the Court got away from so severe a remedy, and that now afforded is more lenient and yet rarely less protective of the purchaser. The obvious answer to the contention that the procedure is violative of the provisions of our statute, Sec. 8578, *et seq.*, Code of 1942, for the voluntary relinquishment of the dower right of a spouse is that her interest is not in fact relinquished, but only transferred from the real estate, of which she refuses to join in the conveyance, to the fund created by the Court to take its place.

This and former decisions of this Court upon the question are in accord with the majority, and we think better reasoned, rule as is seen by reference to the annotations in 46 A. L. R., 748, and 148 A. L. R., 292. The latter is supplementary to the former and follows the full report of our decision upon the second appeal of this case.

Appellants argue at length that a Court cannot bar the claim of inchoate dower but what has already been said effectively refutes this contention. The Court has merely transferred the claim (not barred it) from the premises sold to the fund set aside to replace it. And the careful provision for the security of the fund by a first lien upon the whole premises, with annual income (6 per cent, interest) payable to the husband and corpus to the survivor, negatives all idea of any destruction of the claim or right of the wife's dower both when inchoate and if and when it shall become vested. (Compare the statutory provisions, Secs. 8597-8602 of our Code of 1942, for the divesting of the inchoate right of dower, fixed at one-sixth of the value, by the Probate Court in the case of the sale of real estate by the husband of a mentally unsound wife.)

One of the supposed issues presented is whether the constitutional questions raised, relating also to the Federal Constitution, have been preserved for possible review by the Supreme Court of the United States, if sought by appellants. Of course, our opinion is our own and does not bind that high Court, but we think that such questions are sufficiently in the record for the purpose stated.

The protection of the inchoate right of dower of the appellant Sara S. McCoy lies in large part in the valuation of the property sold which was directed to be had in the last former decision in this Court of this case, and it was had at length and with care and resulted as has been said above, in the fixation of the value of the property at the time of the sale at $10,000.00, and whether it was correct is, properly, the gravamen of this appeal. As stated, the able trial Judge who heard the case, took the testimony, had it transcribed and thereby conveniently before him in his subsequent reception of arguments, consideration and determination of the case. Thus he saw the witnesses and heard them testify, was able to judge their credibility by their demeanor on the witness stand and thereby better enabled to find the

truth of the controversy than is an appellate Court which has only the printed record to ponder. Incidentally, he devoted several weeks to painstaking study of the record and the applicable law.

A number of other sales of similar, nearby lands was in evidence. The admissibility of such and the weight to be given them because of their variations in dates were largely within the discretion of the chancellor and we find not the slightest abuse of that discretion. Options at higher prices had been obtained about that time from nearby landowners in behalf of the State Defense Council, apparently a sort of public development board engaged in an effort to attract new industries into the State, but none of such options was exercised; they were all allowed to lapse.

The burden of appellants' contention upon the paramount issue of the real and market value is that there is a large and accessible limestone deposit under the land, just as it was in the former trial of the case before Mrs. McCoy was made a party, and the appeal from that trial was dismissed by the decision of this Court reported in 201 S. C., 427, 23 S. E. (2d), 372, and an extended discussion now of the evidence thereafter adduced, largely repetitious, would mainly be a useless duplication of our former opinion, just cited. Moreover, the learned trial Judge reviewed the evidence in minute detail and meticulous care, stating and weighing it in his lengthy decree which is now under review.

Upon similar careful consideration, we find the facts weaker for appellants than upon the first former appeal, which involved the question of value. In the latter a purported contract for the sale of the premises, made after the contract involved in the litigation, for the sum of $25,000.00, was submitted; however, it had a time limitation which was palpably impossible of performance because of the pending lawsuit. This supposed prospective purchaser, although pres-

ent at the last trial (that now under appeal), and the head of a cement company, was not produced as a witness. Appellants took the position that they "tendered" him as a witness but he was not called or sworn and, of course, gave no evidence in the case.

Furthermore, since the former trial the erection of a plant for the rendition of alumina from limestone has been commenced in the neighborhood but about a mile across Four Holes Swamp from the McCoy place and its 90-acre site, similarly rich in a substratum of purer limestone, was purchased about 1943 for $40.00 per acre, and an adjoining, larger tract, 713 acres, for about $19.00 per acre. And the latter purchases were for the purpose of the exploitation of the limestone deposits.

The McCoy land is a tract of 560 acres so that the contract price, $10,000.00, which was found by the lower Court to be the value of the premises at the time of the effective date of the contract of sale, represents something less than $20.00 per acre. A plat in evidence and the testimony indicate that it consists largely of cut-over woodland, a considerable acreage in the swamp, and scattered cleared fields aggregating about 125 acres. Undoubtedly there is a rich substratum of limestone but such exists generally in the neighborhood and the promoters of the alumina plant chose a site across the swamp. It is undisputed that a limestone quarry of usual, of even large size, will consume very few acres per year of operation, less than ten. In the testimony it is very clear that the value of such a deposit is dependent on many factors which were not present at the time of the sale or, for that matter, at the time of the trial. The first, of course, is large capital willing to make the plant and other investment necessary for the mining and merchandising of the product. A lime plant was formerly operating practically in sight of the premises but went out of business and was sold at auction.

Appellants depended upon engineering experts from other locations whose opinions ran high (to $100,000.00 and more) upon the potential value of the limestone deposit upon the land in question, but such values are plainly, under the evidence, realizable only by means of the absent factors referred to and upon demand for the products. On the other hand, there was conflicting but competent evidence of other sales of comparable nearby properties at about the same time, and testimony by numerous neighbors familiar with the value of the property for agricultural and other ordinary purposes and who knew of the limestone deposit, which ranged down to $4,000.00. Considering the whole of it, the Court is satisfied that the long-experienced trial Judge reached a just and equitable decision when he fixed the value of the property at the time of sale at $10,000.00, and it will be affirmed.

The Court applied the fair and just rule, quoting, "that value means the price that can be obtained under fair conditions as between a willing buyer and a willing seller, where neither is acting under necessity, compulsion, or peculiar and special circumstances." Many decisions, including some of this Court are found in the annotation in 118 A. L. R., 869, particularly upon the point of the admissibility in evidence of other sales and the scope of the trial Judge's discretion thereabout, the latter being subdivision IIc, p. 904. An interesting discussion of the subject is found in *Orgel on Valuation Under Eminent Domain,* (Michie, 1936), 454 *et seq.*

No evidence was offered upon the measure of the proportionate value of the inchoate right of dower, as was invited in the the last decision in the case by this Court, 203 S. C., 59, 26 S. E. (2d), 175, 148 A. L. R., 285, which left the question entirely open. However, it was fully considered by the trial Court upon the record which included the respective ages of the couple. They are so near the same that

the rule of our former decision of *Ladshaw v. Drake, supra,* would result in an evaluation of the present, inchoate right at a negligible sum, less than $100.00, so it would be patently inequitable in this case.

Conceivably, there could easily be a contest between husband and wife in such a case as this for the greater valuation of the inchoate right the safer would be the wife's assurance of her final acquisition, should she survive, of the full worth of her dower; but such would tend to deprive the husband of the immediate receipt of a correspondingly larger part of the consideration for his sale, so he might consider his interest to lie in the direction of depreciating the value of his wife's contingent right.

In this case, however, no such contest developed. Neither spouse testified on this, or any other question in the last trial, so the Court was left free to do equity in this respect without having to balance the contentions which would have resulted from a contest between the vendor and his wife. In these circumstances, the lower Court properly affirmed the rule of one-sixth for which there is ample authority in the prior decisions of this Court, some cited in the opinion upon the last appeal in this case, 203 S. C., 59, 26 S. E. (2d), 175, 148 A. L. R., 285, which will also be affirmed. See again, Secs. 8597-8602, Code of 1942, where the one-sixth rule is adopted by our statute in the cases to which it is applicable.

The exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.