16102

ANDERSON v. REDMON ET AL.
(48 S. E. (2d) 591)

50

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, for Appellants,

*Messrs. Robinson & Robinson,* of Columbia, for Respondent,

July 8, 1948.

BAKER, C.J.: This action had as its goal the enforcement of the specific performance of an alleged contract of sale entered into by and between one Winston A. Lawton and the appellant, I. D. Redmon, on April 24, 1946, where-

by I. D. Redmon agreed to sell and convey to Lawton, "his heirs, * * * or assigns," a residence then under construction on lot designated as lot 3215 Michigan Street, in the City of Columbia. At the time of the execution of this contract, One Hundred ($100.00) Dollars of the agreed purchase price of Ten Thousand, Five Hundred and Seventy-five ($10,575.00) Dollars, $10,000.00 of which was to go to Redmon, and $575.00 to the Claude E. Creason Company, the real estate broker who had effected the sale, as their commission, was paid to the Creason Company who held said amount in escrow. The sale was to be closed when construction of the house was completed. There was no contract in writing between Redmon and the Creason Company, but merely a verbal listing, and when Redmon signed the contract, at the instigation of the Creason Company, to sell the premises here involved to Lawton, he did not own, nor has he ever owned, but a one-half undivided interest therein, the other one-half interest being owned by his wife, Mrs. Leona W. Redmon. Mrs. Redmon had never authorized Mr. Redmon to bargain to sell her said one-half interest.

John P. Sholar was an employee of the Creason Company, in the capacity of real estate salesman, and the one who handled this transaction. Between April 24, 1946 (the day the contract agreeing to sell this property to Lawton was signed), and May 4, 1946, Mr. Sholar apprised Mr. Redmon of the fact that Mr. Lawton "could not get the money to go through with the contract," and Mr. Redmon thereupon considered that the whole deal was off and acted accordingly. After communicating this information to Redmon, Mr. Sholar learned that the respondent was interested in purchasing a home in the section where the property involved is situate, and although Mr. Lawton was willing to sacrifice the $100.00 which he had paid to the Creason Company, or make whatever sacrifice was necessary to be released from the contract, Mr. Sholar as the agent of the Creason

Company, effected an arrangement between Lawton and respondent whereby Lawton was refunded his $100.00 deposit or earnest money, and assigned his contract of purchase to the respondent.

On September 10, 1946, Mrs. Redmon joined with her husband in conveying this property to the appellant, Michael Turbeville, Jr. There is nothing in the record to indicate that this deed did not contain the usual general warranty clause.

Mr. Redmon was not, until some time in June, 1946, advised of the fact that his contract with Lawton had been assigned to the respondent. It was probably after June 24th, but the precise date is here immaterial. Sholar testified that when he informed Redmon of the assignment of the contract of sale, Redmon indicated that he would be unable to go through with the sale for the reason that his wife's interest in the property would not be released; and that during this conversation he also mentioned that the price was too low. However, when Redmon and his wife conveyed the property to the appellant, Turbeville, $10,000.00 was the sale price, and Redmon testified that they could not sell it for more than that amount under the G. I. Bill. But as we view this case, the amount for which the property was sold to Turbeville is also immaterial for the purpose of deciding this appeal.

At some time not definitely fixed in the testimony, but after Mr. Sholar had notified Mr. Redmon that Mr. Lawton would not go through with the contract, Mr. Sholar, apparently acting for the respondent, called Mrs. Redmon on the phone and informed her that the respondent was going to sue her and her husband "for completion of the house." (Due to inability to procure material, and other causes, there was considerable delay in completing the building of this residence, and it was not finally completed until about March 1, 1947.) Mrs. Redmon thereupon made inquiry of Sholar as to who Mr. Anderson (the respondent)

was, and Sholar replied, "He is the man who bought the house." She then told Sholar that she didn't know anything about that· as she hadn't signed any papers to him, and Sholar replied, "You can be made to sign."

While Mrs. Redmon had no objection to carrying out the contract made by her husband with Lawton as the grantee, although she knew nothing of the contract until after it had been made, she did object to conveying her interest in the property to the respondent after he had made the threat of compelling her to do so. She considered him an undesirable neighbor.

Mrs. Redmon had exercised her legal right of conveying her one-half interest in this property to whom she pleased, when she joined with her husband in executing and delivering a deed therefor as aforesaid on September 10, 1946, to the appellant, Michael Turbeville, Jr.

Prior to conveying the property here involved to the appellant, Turbeville, Redmon of course had actual notice that the respondent claimed as assignee the rights, if any, of Lawton under the contract of sale which had been executed and delivered to him; and the appellant, Turbeville, had constructive notice of the claim of the respondent, the contract of sale and assignment endorsed thereon having been recorded in the office of the Clerk of Court for Richland County on September 4, 1946. But, of course, if it be conceded, without so deciding, that the contract of sale from Redmon to Lawton was, under the circumstances hereinbefore related, still binding and effective as to Mr. Redmon, it could in nowise affect the one-half interest of Mrs. Redmon in this property, and the appellant, Turbeville, acquired this one-half interest on the identical basis as any third party would have acquired it.

With full·notice from Redmon to the respondent that he was not going to convey this property to him under the terms of the contract with Lawton, the respondent pro-

ceeded to make arrangements to procure the money with which to pay for the property, in which he was successful.

This action was commenced on March 6, 1947, at which time the respondent had alternative remedies, (1) to bring his action on the equity side of the court for specific performance and incidental damages, or (2) to sue in a law court for damages for breach of the contract. *Culler v. Hydrick,* 162 S. C. 253, 259, 160 S. E. 731, and cases therein cited.

The respondent brought his action for specific performance on the equity side of the court, the concluding paragraph of his complaint reading as follows:

"That plaintiff is without an adequate remedy at law for the wrong done him by the defendant I. D. Redmon, being in dire need of a home for himself and his family, and having relied upon his contract with Redmon to the exclusion of further efforts on his part to purchase an equally suitable house elsewhere. That plaintiff is advised and believes that he is entitled to a decree directing and requiring the defendant I. D. Redmon to specifically perform the terms of the contract and to convey the property described above to him free and clear of any claim by the defendants Michael C. Turbeville, Jr., and Security Federal Savings and Loan Association, and compensating him for his expenses and damages."

Before proceeding further, we should state that the interest of Security Federal Savings and Loan Association in this controversy is a mortgage held by it over the property involved, executed on September 10, 1946, to it by the appellant, Turbeville.

Following the joining of issue, this case was referred to the Master in Equity for Richland County to take the testimony and report his conclusions of law and fact. It is from this testimony so taken that we are apprised of the pertinent facts hereinabove set out.

The Master, after stating his findings of fact, recommended:

"1. That a decree of specific performance be entered in this cause.

"2. That the defendants, I. D. Redmon and Michael C. Turbeville do forthwith execute and deliver to the Master a deed to James R. Anderson conveying this property in fee, with covenants of general warranty, with the dower the wife (if any) of Michael C. Turbeville, Jr., duly renounced, and that the Security Federal Savings and Loan Association do deposit with the Master its mortgage and bond or note with an appropriate satisfaction.

"3. That these papers be held by the Master for a period of thirty days within which time the plaintiff shall pay to the Master the balance of the purchase price of $10,475.00, with proper allowance for the pro-rating of taxes, etc., as provided in the contract, at which time the Master shall deliver to him the aforesaid deed and satisfied mortgage papers.

"4. That upon compliance all the interest of the defendants in the property at 3215 Michigan Avenue shall cease and their respective interests shall attach to the funds in the hands of the Master.

"5. Out of the funds in his hands the Master shall first pay the costs of this action, then the amount due on the mortgage debt to the Security Federal Savings and Loan Association. Any balance should be held subject to the respective claims of Michael Turbeville and I. D. Redmon.

"6. If for any reason the Court concludes that the plaintiff may not be afforded the relief of specific performance then I hold that his damages are Twenty-Five Hundred Twenty-Five and no/100 ($2,525.00) Dollars, the difference between the market value of the house of $13,000.00 and the balance due on the contract of $10,475.00."

It is obvious that under the complaint in this action for specific performance, and the governing law, the Master was without authority to make an al-

ternative finding of damages based on the difference between the contract price for the property, and its market value when the reference was held; and so was the Circuit Judge.

On appeal from the Master's report and recommendations, the Circuit Judge confirmed same, and expressly affirmed the Master's findings that the respondent had suffered money damages to the extent of $2,525.00, representing the difference between the market price of the house and the contract price, and then concluded his order in the language following:

"The plaintiff, however, does not wish money damages if he can have specific performance. The Court concludes that he is entitled to specific performance and that the performance provided in the Master's report is an appropriate method for a Court of Equity to insure the performance of this contract.

"The contract should have been performed on the 1st of March, 1947, and that is the date as of which the closing statement should be effected. In other words, the plaintiff is entitled to the reasonable rental value of the property since that date and is chargeable with taxes, fire insurance premiums and interest on the purchase price since that date. He is also entitled to an allowance growing out of any injury or damage to the house which has occurred since its completion, to any reasonable expense incident to putting the property in proper repair, and for redecorations, if any are needed. To carry this portion of the decree into effect it seems appropriate to refer the case back to the Master with an opportunity by all parties to this action to examine the house and present testimony as to whether or not it is in need of repair or redecoration and if so, what amount will compensate plaintiff for these items, and to adjust the rental, taxes, etc.

"It is therefore

"Ordered and Adjudged:

"1. That the Master's report of the 25th of August, 1947, be and the same is hereby confirmed.

"2. That specific performance of the contract of the 24th of April, 1946, is ordered.

"3. That the procedure outlined in the Master's report shall be followed in carrying this decree into effect.

"4. That the matter be referred back to the Master for Richland County with directions to take testimony and report his findings with regard to any adjustments necessary in regard to the closing of this transaction as of March 1, 1947, and for the purpose of effecting the closing of the sale. In the event the defendants fail to comply with this decree with reference to filing with the Master the deed and satisfied mortgage, as provided in the Master's Report, the plaintiff is authorized to apply to this Court for a decree vesting title in him upon his compliance with the purchase terms, or for such other order as may be appropriate in the circumstances."

For the purpose of this appeal, and for no other purpose, let it be conceded that Redmon had not been released from his contract to convey his one-half interest (all he ever owned) in the property; and let it also be kept in mind that Mrs. Redmon did not convey her one-half interest therein to Mr. Redmon, but to Turbeville; and further, there is no charge, and no evidence which would support the charge if it had been made, that there was any fraud or collusion between Redmon and Turbeville. We then have the entire legal title to this residence and lot in Turbeville, with a one-half interest therein subject to the rights of the respondent under the contract, and the other one-half interest not subject thereto.

Under these circumstances, it is obvious that the Court of Common Pleas was without authority of law to require Turbeville to join in a deed with Redmon conveying the one-half interest which he had acquired

from Mrs. Redmon, in addition to any interest he had acquired from Redmon.

Since at most the Court could enforce the specific performance of the contract only as to a one-half interest in the property, and since the property involved is indivisible, then conceding, but not deciding, that Redmon had not been released from his contract of sale to Lawton; and since it would be highly impractical, and unworkable (and no doubt wholly unsatisfactory to the respondent), and to decree a conveyance of a one-half interest in the property to the respondent, we have reached the conclusion that the order of the Circuit Court should not be merely modified, but that it should be reversed *in toto,* and it is so,

Ordered, without prejudice to any cause of action for damages the respondent has, if any, for breach of contract.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.