16188

MOORE v. MAES *ET AL.*

(52 S. E. (2d) 204)

*Messrs. Shimel and Ackerman,* of Charleston, *for Appellants,*

*Messrs. C. R. Burbage and Morris D. Rosen,* of Charleston, *for Respondent,*

March 3, 1949.

FISHBURNE, Justice.

The complaint in this case seeks specific performance of an option for the purchase of two lots located at the Northwest Corner of Carolina and Reynolds Avenues, Navy Yard, South Carolina, together with the buildings thereon, which property is described as follows:

"All that certain lot, piece, or parcel of land situate, lying and being in Chicora Place, in the County of Charleston, and State of South Carolina, being known, numbered, and designated on the plat of Chicora Place, recorded in Plat

Book D, Page 197, in the R. M. C. Office of Charleston County, as Lots One (1) and Two (2) in Block A."

The premises in question were leased by the appellant, Mon Maes, to Jesse Fabian, the assignor of the plaintiff-respondent, for the term of three years. The lease, which is attached to the complaint as an exhibit, provides for a tenancy commencing August 1, 1941, and ending July 31, 1944, at a rental of $125.00 per month, payable in advance on the first day of each month. It further provides that "Jesse Fabian shall have the option to renew said lease for a like term, at an increase of twenty-five per cent. (25%) in the rent, upon sixty (60) days notice, prior to the termination of this agreement."

Then in a subsequent paragraph, the option to purchase the demised premises is given to the lessee "during the term of this agreement, for the sum of Fifteen Thousand Five Hundred ($15,500.00) Dollars."

Jesse Fabian, the lessee, entered into possession of the premises, and thereafter, in accordance with the terms of the agreement, the lease was renewed at the date of its expiration, July 31, 1944, for another term of three years; and commencing August 1, 1944, the lessee paid to the lessor the additional rental of twenty-five per cent.

On March 1, 1945, Fabian assigned all interest he had in the lease and its extended term, to the plaintiff, Ronald Moore, who went into possession of the property, paying therefor the same increased monthly rental to the lessor which had been paid by Fabian. Thereafter, on January 13, 1947, Moore gave written notice to the appellants, Mon Maes and his wife, Julia Maes, that he wished to exercise his option to purchase the property for the agreed price of $15,-500.00, and requested that the transaction be concluded on or before January 31, 1947, before another monthly payment of rent should fall due, on February 1st. The appellants refused to comply, and this suit for specific performance promptly followed.

To clarify the situation we should state that the action was brought against Mon Maes and his wife, Julia Maes. The latter was made a party defendant under the allegation that she was co-owner (an undivided one-half interest) of the leased property with her husband, and that although she had not signed the lease, she had authorized her husband as her agent to enter into the lease and option to purchase.

The cause was referred to a special master, who found from the evidence that Julia Maes was not bound by the option; that specific performance should be required of Mon Maes as to his undivided one-half interest in the property, and recommended that the master be authorized to execute and deliver unto the plaintiff a deed therefor upon payment by him of the sum of Seven Thousand Seven Hundred and Fifty ($7,750.00) Dollars, this amount being one-half the contract price. Certain deductions from the above figures were recommended by the master in favor of the plaintiff to which we will hereafter refer. The findings and recommendations of the master were confirmed by the circuit court. Both the master and the circuit court held that the option to purchase contained in the original lease was extended with the renewal of that lease for an additional three years; and that such option could be exercised not only during the original term of three years created by such lease, but also during the extension of that term.

The primary question presented by the appeal from the judgment of the lower court is: Where the original lease or agreement to lease provides for an extension of the term, at the tenant's election, is an option therein contained, to purchase the leased property, likewise extended?

The courts are not in complete agreement on this question, but the present tendency and, in our opinion, the better rule, supported by a majority of the courts, is to hold that where a lease with a right of renewal contains an option to purchase, it will be considered as an indivisible contract. Unless otherwise limited, the lessee's op-

tion may be exercised during the period of renewal or extension. *Schaeffer v. Bilger,* 1946, 186 Md. 1, 45 A. (2d) 775, 163 A. L. R. 706; 32 Am. Jur. Sec. 308, Page 285; 51 C. J. S. Landlord and Tenant, § 84, page 643; Annotations, 37 A. L. R. 1245, 39 A. L. R. 1108, 163 A. L. R. 711.

The specific point presented has never been passed upon by our court, although the case of *Jackson v. Rogers,* 111 S. C. 49, 96 S. E. 692, is analogous. There are, however, numerous cases from other jurisdictions which uphold the principle declared.

In *Johnson v. Bates,* 1940, 128 N. J. Eq. 183, 15 A. (2d) 642, 643, the court passed directly upon the question we have here. A lease for the term of one year contained an option agreement to purchase which provided that the option had to be exercised "on or before the expiration" of the lease, and it also gave to the lessee the privilege to renew for four additional terms of one year each. Holding that the lease had not expired when the tenant sought to exercise the option to purchase during the renewed term, the court, speaking of renewal leases, said:

"In such case, if the lessee were to avail itself of the renewals provided for by the express terms of the lease, the lease could not be said to have ceased to exist at the end of the first year; on the contrary, the life of the lease would, in those circumstances, continue and extend for additional periods of one year each, at the election of the lessee, until the privilege of renewal were exhausted or forfeited."

The question whether the renewal of a lease also renewed the option to purchase contained in the original lease agreement was likewise answered in the affirmative in *Volunteers of America v. Spring,* 1927, 27 Ohio App. 229, 161 N. E. 215, where the original lease provided that it "may be renewed for another term of five years * * *, all other conditions to be the same", the court saying that this language was broad enough to include the option to purchase.

Another well-considered case, announcing the same rule, is that of *Schaeffer v. Bilger,* 1946, 186 Md. 1, 45 A. (2d) 775, 163 A. L. R. 706. To the same effect is *Rubin v. Gochrach,* 186 Va. 786, 44 S. E. (2d) 1; *First-Citizens Bank & Trust Co. v. Frazelle,* 226 N. C. 724, 40 S. E. (2d) 367; *Meadow Heights Country Club v. Hinckley,* 229 Mich. 291, 201 N. W. 190.

We think under the terms of the lease entered into between the lessor and lessee, that the option to purchase contained in the original lease continued during the extended term and could be exercised as a matter of right at the election of the respondent, who is the assignee of Fabian, the original lessee.

The appellant, Mon Maes, raises the issue that the lower court erred in decreeing specific performance as to the undivided one-half interest in the premises owned by him, inasmuch as the suit was brought for a conveyance of the entire interest in the premises. We find no merit in this contention.

Where the vendor is unable to convey the full title or the full amount of property which he contracted to sell, and the vendee elects to take that which the vendor has, the court will not permit the vendor to object that he does not have the whole thereof. The court will compel him, if the vendee so chooses, to execute so much of the contract as he is able, allowing the vendee to have an abatement of the purchase price proportionate to the value of the defect in title or deficiency in interest. *Harbers v. Gadsden,* 6 Rich. Eq. 284, 27 S. C. Eq., 62 Am. Dec. 390; *Flowe v. Hartwick,* 167 N. C. 448, 83 S. E. 841; *Bryant Timber Co. v. Wilson,* 151 N. C. 154, 65 S. E. 932, 134 Am. St. Rep. 982; *Kares v. Covell,* 180 Mass. 206, 62 N. E. 244, 91 Am. St. Rep. 271; 49 Am. Jur. Sec. 102, Page 120; 10 L. R. A., N. S., Page 118, Annotation.

There can be no doubt under the foregoing authorities that if a vendor is unable to perform the entire agreement, and can convey only an undivided half

of the property, as in this case, he may be compelled, at the election of the vendee, to convey that interest; and in such case it is only necessary for the vendee, in accordance with the judgment of the lower court, to pay as the purchase money one-half of the contract price. The case at bar is to be distinguished from the case of *Anderson v. Redmon,* 213 S. C. 49, 48 S. E. (2d) 591, where there was no showing of election on the part of the party seeking specific performance to take less than the whole estate contracted to be conveyed.

It was adjudged by the lower court as recommended by the master, that appellant, Mon Maes, be paid the sum of $7,750.00, with certain deductions, for his undivided one-half interest in the premises, and that the conveyance be made by the master.

The appellant assigns error and contends that the decree should have directed that the deed be executed and delivered by him, and that the master should be authorized to execute and deliver such conveyance of his undivided interest only in the event he should refuse to do so. In addition to this, it is pointed out that if the master be initially authorized to make the conveyance, this appellant would not only lose the amount of costs and commissions to which the master would be entitled for conveying the premises, but would also be deprived of the right and opportunity to receive from the respondent a bond and mortgage to protect the inchoate right of dower of appellant, Julia Maes, in the one-half interest so conveyed.

We think there is merit in this contention, and the decree must be modified accordingly. *Holly Hill Lumber Co. v. McCoy,* 201 S. C. 427, 23 S. E. (2d) 372; *Holly Hill Lumber Co. v. McCoy,* 205 S. C. 60, 30 S. E. (2d) 856.

The decree provided, in accordance with the recommendation of the master, that in the event Julia Maes should refuse to renounce dower, that the court au-

thorize and direct the master to set aside one-sixth of the amount to be paid her husband, which should be held in possession of the court until such time as the survivor of the two would become entitled thereto. We think the decree should have directed that the respondent execute and deliver a bond for one-sixth of the purchase money to Mon Maes, secured by a mortgage constituting a first lien upon one-half interest in the premises sold, the condition of the bond being that respondent shall pay to Mon Maes interest thereon at the rate of six per cent. per annum, payable annually, so long as his wife, Julia Maes, lives, and that the corpus or principal amount should be paid to the survivor. *Holly Hill Lumber Co. v. McCoy*, 203 S. C. 59, 26 S. E. (2d) 175, 148 A. L. R. 285; *Holly Hill Lumber Co. v. McCoy,* 205 S. C. 60, 30 S. E. (2d) 856.

The lower court ordered and directed that the amount to be paid by respondent for a deed conveying the undivided one-half interest of Mon Maes should be the sum of $7,750-.00, less one-half of the rent which had accrued to the owners (Ronald Moore and Julia Maes) since January 13, 1947, which was the day when appellant Maes was notified in writing of the respondent's intention to exercise the option to purchase. Respondent, Moore, had continued to pay the monthly rent from February 1, 1947, to August 1, 1947.

Where the option to purchase is duly exercised by an election to purchase, the relation of landlord and tenant ceases and that of vendor and purchaser is created. Unless there is an express stipulation therefor, the lessor is not entitled to rent after the option to purchase is exercised. 51 C. J. S., Landlord and Tenant, § 82(a), page 640; 32 Am. Jur., Sec. 300, page 280.

Respondent, therefore, owed no rental money to Mon Maes from February 1, 1947, to August 1, 1947, and would be entitled to an accounting for one-half of whatever this amounted to. Of course, Julia Maes would be entitled to retain the one-half she received during this period.

No provision was made in the decree for taking into consideration rents which were due from respondent to Julia Maes commencing August 1, 1947, to the present time, although respondent continued to occupy the premises from then until now and has not paid or accounted to her for the one-half of the rental due her. This he must do. In the final settlement between the parties, respondent will be charged with one-half of the expense of the property, such as repairs, taxes and insurance, if any such amounts have been paid, commencing from January 13, 1947, the day when he gave notice of his election to exercise the option to purchase.

It is suggested in the brief of appellant that the property covered by the lease and option is not sufficiently described therein. However, the entire record in this case, the pleadings, testimony, and the theory upon which it was tried, show beyond question that the parties were under no misapprehension as to the identity of the premises in question.

The judgment of the circuit court is affirmed, except as herein modified, and the cause remanded for appropriate action in conformity with the views herein expressed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.